1
2
3
4

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

5

6

WENDY C.,

7
                          Plaintiff,

8       v.

9    COMMISSIONER OF SOCIAL
     SECURITY,

10
                          Defendant.

Case No. 3:19-cv-05486

ORDER REVERSING AND
REMANDING DEFENDANT'S
DECISION TO DENY BENEFITS

11

12        Plaintiff has brought this matter for judicial review of Defendant's denial of her

13   application for supplemental security income benefits.

14        The parties have consented to have this matter heard by the undersigned

15   Magistrate Judge. 28 U.S.C. § 636(c); Federal Rule of Civil Procedure 73; Local Rule

16   MJR 13. For the reasons set forth below, the undersigned agrees that the ALJ erred,

17   and the ALJ's decision is reversed and remanded for further administrative proceedings.

18                          I.    ISSUES FOR REVEW

19        1.  Did the ALJ err in evaluating Plaintiff's symptom testimony?
          2.  Did the ALJ properly evaluate the opinion of a nurse practitioner?
20        3.  Did the ALJ sufficiently account for Plaintiff's mental limitations
              when assessing her residual functional capacity ("RFC")?

21

22                          II.   BACKGROUND

23        On July 15, 2013, Plaintiff filed an application for supplemental security income

24   benefits, alleging a disability onset date of September 5, 2010. AR 23, 190-98. Plaintiff's

25

application was denied upon initial administrative review and on reconsideration. AR 23, 121-29, 133-38. A hearing was held before Administrative Law Judge ("ALJ") Susan Leise on September 16, 2015. AR 42-70, 1174-1202. On January 22, 2016, ALJ Leise issued a written decision finding that Plaintiff was not disabled. AR 20-35, 1115-30. The Social Security Appeals Council denied Plaintiff's request for review on May 26, 2017. AR 1-6, 1137-42.

On September 8, 2017, Plaintiff filed a complaint in this Court seeking judicial review of the ALJ's written decision. AR 1144. On August 9, 2018 this Court remanded the case for further proceedings, and ordered the ALJ to re-evaluate Plaintiff's symptom testimony. AR 1149-62. On September 2, 2018, the Appeals Council vacated the ALJ's January 22, 2016 decision and issued an order remanding the case for further administrative proceedings consistent with the Court's order. AR 1167-69.

On February 14, 2019, ALJ Vadim Mozyrsky held a new hearing. AR 1095-1114. On April 1, 2019, ALJ Mozyrsky issued a written decision finding that Plaintiff was not disabled. AR 1068-86.

On June 6, 2019, Plaintiff filed a complaint in this Court seeking judicial review of the ALJ's written decision. Dkt. 4.

III.     STANDARD OF REVIEW

The Court will uphold an ALJ's decision unless: (1) the decision is based on legal error, or (2) the decision is not supported by substantial evidence. *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v.*

1   *Berryhill,* 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305

2   U.S. 197, 229 (1938)). This requires "more than a mere scintilla," of evidence. *Id.*

3          The Court must consider the administrative record as a whole. *Garrison v. Colvin,*

4   759 F.3d 995, 1009 (9th Cir. 2014). It must weigh both the evidence that supports, and

5   evidence that does not support, the ALJ's conclusion. *Id.* The Court considers in its

6   review only the reasons the ALJ identified and may not affirm for a different reason.

7   *Garrison,* 579 F.3d at 1010. Furthermore, "[l]ong-standing principles of administrative

8   law require us to review the ALJ's decision based on the reasoning and actual findings

9   offered by the ALJ—not post hoc rationalizations that attempt to intuit what the

10  adjudicator may have been thinking." *Bray v. Comm'r of SSA*, 554 F.3d 1219, 1225-26

11  (9th Cir. 2009) (citations omitted).

12         If the ALJ's decision is based on a rational interpretation of conflicting evidence, the

13  Court will uphold the ALJ's finding. *Carmickle v. Comm'r of Soc. Sec. Admin.,* 533 F.3d

14  1155, 1165 (9th Cir. 2008). It is unnecessary for the ALJ to "discuss *all* evidence

15  presented". *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir.

16  1984) (citation omitted) (emphasis in original). The ALJ must only explain why

17  "significant probative evidence has been rejected." *Id.*

18                              IV.      <u>DISCUSSION</u>

19         In this case, the ALJ found that Plaintiff had the following severe, medically

20  determinable impairments: depression, anxiety, cervicalgia, carpal tunnel syndrome,

21  and partial tear of the right rotator cuff. AR 1073.

22         Based on the limitations stemming from these impairments, the ALJ assessed

23  Plaintiff as being able to perform a reduced range of light work. AR 1076. Relying on

24  vocational expert ("VE") testimony, the ALJ found that Plaintiff could perform other light

25

1  unskilled jobs at step five of the sequential evaluation; therefore the ALJ determined at

2  step five that Plaintiff was not disabled. AR 1085, 1108-09.

3       A.  <u>Whether the ALJ erred in evaluating Plaintiff's testimony</u>

4       Plaintiff contends that the ALJ did not provide clear and convincing reasons for

5  discounting her symptom testimony. Dkt. 12, pp. 3-10.

6       In weighing a Plaintiff's testimony, an ALJ must use a two-step process. *Trevizo*

7  *v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). First, the ALJ must determine whether

8  there is objective medical evidence of an underlying impairment that could reasonably

9  be expected to produce some degree of the alleged symptoms. *Ghanim v. Colvin,* 763

10  F.3d 1154, 1163 (9th Cir. 2014). If the first step is satisfied, and provided there is no

11  evidence of malingering, the second step allows the ALJ to reject the claimant's

12  testimony of the severity of symptoms if the ALJ can provide specific findings and clear

13  and convincing reasons for rejecting the claimant's testimony. *Id. See Verduzco v.*

14  *Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999).

15       In discounting Plaintiff's symptom testimony, the ALJ reasoned that: (1) Plaintiff's

16  allegations were inconsistent with the medical record; (2) Plaintiff's condition was

17  managed with conservative treatment; (3) Plaintiff exaggerated her symptoms; and (4)

18  Plaintiff failed to provide good reasons for not taking her pain medication as prescribed

19  and discontinuing physical therapy. AR 1078.

20       With respect to the ALJ's first reason, an inconsistency with the objective

21  evidence may serve as a clear and convincing reason for discounting a claimant's

22  testimony. *Regennitter v. Commissioner of Social Sec. Admin.*, 166 F.3d 1294, 1297

23  (9th Cir. 1998). But an ALJ may not reject a claimant's subjective symptom testimony

24

25

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS - 4

1  "solely because the degree of pain alleged is not supported by objective medical

2  evidence." *Orteza v. Shalala*, 50 F.3d 748, 749-50 (9th Cir. 1995) (internal quotation

3  marks omitted, and emphasis added); *Byrnes v. Shalala*, 60 F.3d 639, 641-42 (9th Cir.

4  1995) (applying rule to subjective complaints other than pain).

5        Here, the ALJ found that while Plaintiff's allegations concerning her neck,

6  shoulder, and arm pain were supported to some extent by diagnostic imaging and

7  physical examination results, they were inconsistent with MRI results showing an intact

8  and solid cervical fusion post-surgery, normal physical examination results, and some

9  temporary improvement in symptoms with treatment. AR 852, 856, 873, 876, 893, 895,

10  897, 902-03, 923, 1078.

11        Although the ALJ's second reason, evidence of conservative treatment

12  successfully relieving symptoms, can serve as a clear and convincing reason for

13  discounting a Plaintiff's testimony, in this case there is not substantial evidence in the

14  record to support the reasoning.

15        Here, the ALJ reasoned that Plaintiff underwent some "temporary" improvement

16  in her symptoms following physical therapy. AR 852, 856, 873, 876, 1078. The ALJ also

17  reasoned that Plaintiff never received more aggressive treatment such as steroid

18  injections or surgery. AR 1078. *See* 20 C.F.R. § 416.929(c)(3)(iv) (the effectiveness of

19  medication and treatment are relevant to the evaluation of a claimant's alleged

20  symptoms); *see also Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (citing

21  *Parra v. Astrue*, 481 F.3d 742, 750–51 (9th Cir.2007) (stating that "evidence of

22  'conservative treatment' is sufficient to discount a claimant's testimony regarding

23  severity of an impairment"). Yet, a "temporary" improvement in symptoms with treatment

24

25

1    cannot serve as a clear and convincing reason for discounting Plaintiff's testimony. *See*

2    *Garrison v. Colvin*, 759 F.3d 995, 1017-18 (2014) (finding that the ALJ erred by

3    improperly singling out a few periods of temporary well-being from a sustained period of

4    impairment and relied on those instances to discredit a claimant); *see also Lingenfelter*

5    *v. Astrue*, 504 F.3d 1028, 1035 (9th Cir.2007) (The Court must consider the entire

6    record as a whole, weighing both the evidence that supports and detracts from the

7    Commissioner's finding, and may not affirm simply by isolating a specific quantum of

8    supporting evidence.")

9        In addition, the treatment notes cited by the ALJ are not consistent with a finding

10   that Plaintiff experienced even temporary improvement of her physical symptoms with

11   conservative treatment. Plaintiff's physical therapist specifically noted that conservative

12   treatment failed to resolve Plaintiff's symptoms, and that Plaintiff's cervical fusion

13   surgery only mildly improved her neck, back, and arm pain. AR 852, 856. The treatment

14   notes also indicate that the Plaintiff's symptoms typically returned the same day she

15   underwent physical therapy. 852, 856, 873.

16       Moreover, the ALJ's finding that Plaintiff never underwent surgery for her

17   condition is not accurate. Plaintiff underwent a cervical disc fusion procedure in January

18   2011 that was minimally effective in relieving her symptoms. AR 372, 789, 852. Plaintiff

19   also received trigger point injections prior to her alleged onset date. AR 302, 342.

20       Even if Plaintiff's physicians had not recommended surgery, this would not

21   necessarily indicate that Plaintiff's treatment was conservative. *See e.g. Arthur C. v.*

22   *Saul*, 2019 WL 5420445, at *5 (C.D. Cal. Oct. 23, 2019) (rejecting characterization of a

23   claimant's treatment as conservative when claimant's treating physician failed to

24

25

recommend back surgery); *Hunter v. Berryhill*, 2018 WL 4026995, at *15 (C.D. Cal. Aug. 21, 2018) (same). Further, the record indicates that Plaintiff was not prescribed opioid pain medication due to her physician's concern that she was at high risk for addiction given her past difficulties with alcohol. AR 725, 932; *see also O'Connor v. Berryhill*, 355 F. Supp. 3d 972, 985 (W.D. Wash. 2019) (noting that courts in the Ninth Circuit have generally held that consistent use of strong opioid analgesics cannot be accurately characterized as "conservative" treatment).

With respect to the ALJ's third reason, affirmative evidence of symptom magnification, or malingering, relieves an ALJ from the burden of providing specific, clear, and convincing reasons for discounting a claimant's testimony. *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir.2006); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir.1999). "The essential feature of malingering is the intentional production of false or grossly exaggerated physical or psychological symptoms, motivated by external incentives such as . . . obtaining financial compensation . . . or obtaining drugs."  American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 726 (5th ed. 2013) ("DSM V").

Here, the ALJ cited physical therapy notes showing that Plaintiff was "over-exaggerating" her symptoms. AR 1078. The evidence in question, from January 2018, includes a single statement from Plaintiff's physical therapist that Plaintiff "*at times seemed* to over-exaggerate symptoms." AR 1309 (emphasis added). This isolated, equivocal statement cannot serve as a clear and convincing reason for discounting Plaintiff's testimony.

1    Regarding the ALJ's fourth reason, the ALJ found that Plaintiff failed to provide

2    good explanation for discontinuing physical therapy and not taking her pain medication

3    as recommended, suggesting that perhaps her pain and radiculopathy symptoms were

4    not as bothersome as alleged. AR 1078.

5    Social Security Ruling ("SSR") 16-3p provides that if an individual fails to follow

6    prescribed treatment that might improve symptoms, an ALJ may find that the alleged

7    intensity of an individual's symptoms is inconsistent with the record. SSR 16-3p; *see*

8    *also Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) ("[A]n unexplained, or

9    inadequately explained, failure to . . . follow a prescribed course of treatment . . . can

10   cast doubt on the sincerity of the claimant's pain testimony."). But an ALJ "will not find

11   an individual's symptoms inconsistent with the evidence in the record on this basis

12   without considering possible reasons he or she may not comply with treatment or seek

13   treatment consistent with the degree of his or her complaints." SSR 16-3p; *see also* 20

14   C.F.R. § 416.930 (the Social Security Administration will consider a claimant's physical,

15   mental, educational, and linguistic limitations when determining whether a claimant has

16   an acceptable reason for failure to follow prescribed treatment).

17   Social Security regulations require an ALJ to consider side effects of medication

18   taken for pain or other symptoms when assessing allegations of disabling symptoms. 20

19   C.F.R. § 416.929(c)(3)(iv).

20   Plaintiff stated that she was not taking her medication, Gabapentin, as prescribed

21   because it was ineffective at relieving her pain and she was concerned that it would put

22   her in a "daze" throughout the day. AR 56-57. *Trevizo v. Berryhill*, 871 F.3d 664, 679-80

23   (9th Cir. 2017) ("The ALJ did not address the believability of Trevizo's proffered

24

25

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS - 8

1  reasons: her fear of becoming addicted to narcotics and the ability of alternate drugs to

2  control her pain. The ALJ's weighing of Trevizo's failure to take narcotics against her

3  credibility was thus erroneous."). The ALJ did not consider the impact of these side

4  effects when assessing Plaintiff's testimony.

5      The record contains additional explanations, not considered by the ALJ, why

6  Plaintiff was not compliant with her treatment regimen. Plaintiff attended 13 physical

7  therapy sessions but was discharged in 2014 because her insurance provider would no

8  longer cover her treatment. AR 843. Social Security regulations and Ninth Circuit case

9  law establish that an inability to afford treatment or access low cost medical services

10  can be a legitimate reason for not seeking medical treatment. *See* SSR 16-3; *Trevizo v.*

11  *Berryhill*, 871 F.3d 664, 681 (9th Cir. 2017), *citing Gamble v. Chater*, 68 F.3d 319, 321

12  (9th Cir. 1995) ("Disability benefits may not be denied because of the claimant's failure

13  to obtain treatment he cannot obtain for lack of funds."); *see also Regennitter v. Comm'r*

14  *SSA*, 166 F.3d 1294, 1296 (9th Cir. 1999) ("Although we have held that 'an

15  unexplained, or inadequately explained failure to seek treatment can cast doubt on the

16  sincerity of a claimant's pain testimony,' we have proscribed the rejection of a claimant's

17  complaint for lack of treatment when the record establishes that the claimant could not

18  afford it").

19      Accordingly, the ALJ has not provided clear and convincing reasons for

20  discounting Plaintiff's testimony.

21      B.  Whether the ALJ erred in evaluating the opinion of a nurse practitioner

22      Plaintiff alleges that the ALJ erred in evaluating the opinion of Howard Welch,

23  FNP. Dkt. 12, pp. 10-13.

24

25

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS - 9

1    When evaluating opinions from non-acceptable medical sources such as a nurse

2    practitioner or a family member, an ALJ may expressly disregard such lay testimony if

3    the ALJ provides "reasons germane to each witness for doing so." *Turner v.*

4    *Commissioner of Social Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010) (citing *Lewis v. Apfel*,

5    236 F.3d 503, 511 (9th Cir. 2001); 20 C.F.R. § 416.902.[1]

6    Mr. Welch completed an assessment of Plaintiff's physical functioning on

7    October 30, 2013. AR 728-29. Mr. Welch opined that Plaintiff could sit 1 hour and stand

8    and/or walk for 2 hours in an 8-hour day. AR 728. Mr. Welch further opined that Plaintiff

9    could occasionally lift and carry less than 10 pounds, but that it was too early determine

10   whether Plaintiff had any manipulative limitations or how often she would need to miss

11   work. AR 728-29.

12   The ALJ assigned "little weight" to Mr. Welch's opinion, reasoning that it was

13   rendered shortly after Mr. Welch began treating Plaintiff and was not consistent with

14   contemporaneous treatment notes, which indicated that Plaintiff had normal strength,

15   normal reflexes and her sensation was intact. AR 927, 1080-81. An inconsistency

16   between the medical evidence and the opinion of a non-acceptable medical source can

17   constitute a germane reason for discounting that opinion. *See e.g. Bayliss v. Barnhart*,

18   427 F.3d, 1211, 1217 (9th Cir. 2005), *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001)

19   (conflict between lay witness testimony and the medical evidence is a germane reason

20   for rejecting such testimony); *see also* 20 C.F.R. § 416.927(c) (noting that generally, the

21   longer a treating source has treated a claimant and the more times the claimant has

---

[1] The Administration has amended regulations for evaluating evidence from non-acceptable medical sources, but the amended regulations apply only to claims filed on or after March 27, 2017 and therefore are not relevant to this case. *See* 20 C.F.R. § 416.927 (applicable to claims filed before March 27, 2017); 20 C.F.R. 416.920c (applicable to claims filed after March 27, 2017).

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS - 10

1   been seen by a treating source, the more weight the Social Security Administration will

2   give to the source's medical opinion).

3       By noting Mr. Welch's statement that he had only recent begun treating Plaintiff,

4   and citing the inconsistency of his opinion with the contemporaneous medical record,

5   the ALJ has provided germane reasons for discounting Mr. Welch's opinion.

6       C.   Whether the ALJ erred in assessing the RFC

7       Plaintiff contends that the ALJ erred in finding that the RFC limitation to

8   performing simple, routine, and repetitive tasks and simple work-related decisions was

9   sufficient to accommodate the moderate limitations in concentration, persistence, and

10  pace the ALJ assessed in connection with the paragraph B criteria. Dkt. 12, pp. 13-14;

11  AR 1075-76.

12      The ALJ must evaluate the paragraph B criteria to determine if the severity of the

13  claimant's mental impairment meets or is medically equal to the criteria of a listed

14  impairment. 20 C.F.R. Part 404, Subpart P, Appendix 1. To meet the paragraph B

15  criteria, a claimant must have an extreme limitation of one, or marked limitation of two,

16  of the following areas of mental functioning: understanding, remembering, or applying

17  information; interacting with others; concentrating, persisting, or maintaining pace; and

18  adapting or managing oneself. 20 C.F.R. pt. 404, subpt. P app. 1, § 12.00(E).

19      Social Security regulations provide that in assessing disability claims,

20  adjudicators must remember that the limitations identified in the paragraph B criteria

21  "are not an RFC assessment but are used to rate the severity of mental impairment(s)

22  at steps 2 and 3 of the sequential evaluation process. *See* SSR 96-8p.

23

24

25

1   "Between steps three and four, the ALJ must, as an intermediate step, assess

2   the claimant's RFC." *Bray v. Comm'r of Social Security Admin.*, 554 F.3d 1219, 1222–

3   23 (9th Cir. 2009). In formulating the mental RFC assessment used at steps 4 and 5 of

4   the sequential evaluation process, the ALJ is required to perform "a more detailed

5   assessment by itemizing various functions contained in the broad categories found in

6   paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of

7   Impairments, and summarized on the PRTF (Psychiatric Review Technique Form)."

8   SSR 96-8p.

9        While similar evidence may be used in both assessments of Plaintiff's mental

10  impairments, they are distinct, and limitations assessed in the context of the paragraph

11  B assessment are not necessarily transferable to the more detailed assessment

12  required when formulating the RFC. The ALJ's task when assessing the RFC is not to

13  provide an adequate explanation for how the RFC accommodates the ALJ's paragraph

14  B findings, but rather to perform a new, more detailed assessment incorporating *all* the

15  relevant evidence. SSR 96-8p; *see Israel v. Astrue,* 494 F. App'x 794 (9th Cir. 2012)

16  (noting that the mental limitations identified at step three of the sequential evaluation

17  process are not an RFC assessment, and that the ALJ must consider the step three

18  limitations along with all the relevant evidence).

19       As such, the question is not whether the ALJ's paragraph B findings are

20  consistent with the RFC, but whether the ALJ has provided an adequate explanation for

21  the mental limitations contained in the RFC. The ALJ specifically noted, in language

22  common to Social Security decisions, that the RFC reflected the degree of limitation

23  found in the paragraph B mental functional analysis. AR 1075-76.

24

25

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS - 12

1    Courts in the Ninth Circuit have routinely found that a statement from the ALJ

2    that the degree of limitation found in the paragraph B mental functional analysis was

3    incorporated into the RFC is sufficient to meet the requirements set forth in Social

4    Security regulations. *See e.g. Van Houten v. Berryhill,* 2019 WL 691200, at *14 (E.D.

5    California, February 19, 2019), citing *Ming Y. Huang v. Berryhill*, 2017 WL 6557757, at

6    *8-9 (S.D. Cal. Dec. 22, 2017) (rejecting the plaintiff's argument that "the ALJ erred by

7    not including her mild mental limitations... in [the] residual functional capacity" where the

8    ALJ reviewed the Paragraph B criteria "and expressly incorporated [the] mild mental

9    limitations into the RFC"), adopted in 2018 WL 480806; *Scotellaro v. Colvin*, 2015 WL

10   4275970 at *9 (D. Nev. June 22, 2015) (finding "the ALJ considered Plaintiff's mild

11   mental limitation in his RFC analysis where the ALJ analyzed the Paragraph B criteria

12   "at step two and incorporated by reference in his RFC analysis").

13    Further, a finding that an individual has "moderate" limitations in the paragraph B

14   criteria domains does not require the ALJ to assess a specific degree of functional

15   limitation in the RFC. *See e.g. Collingswood-Bonse v. Colvin*, No. 13-1646, 2015 WL

16   853063, at *5-6 (D. Or. Feb. 24, 2015) (affirming an RFC for routine, repetitive work

17   where ALJ found moderate limitations in concentration, persistence, or pace); *Phillips v.*

18   *Colvin*, 61 F. Supp. 3d 925, 940 (N.D. Cal. 2014) ("a moderate difficulty in

19   concentration, persistence, or pace does not automatically translate to a RFC finding

20   with these limitations").

21    With respect to Plaintiff's ability to concentrate, persist, and maintain pace, the

22   Ninth Circuit has held that when posing a hypothetical question to a vocational expert, a

23   ALJ's RFC restriction to "simple, repetitive work" was insufficient to accommodate

24

25

1   moderate limitations in concentration, persistence, or pace given that "repetitive,

2   assembly-line work of the type described by the [vocational] expert might well require

3   extensive focus or speed." *Brink v. Comm'r Soc. Sec. Admin.,* 343 Fed. Appx. 211, 212

4   (9th Cir.2009); *see also Newton v. Chater*, 92 F.3d 688, 695 (8th Cir.1996) (holding

5   "simple jobs" was insufficient to cover concentration, persistence, or pace deficiencies);

6   *Lubin v. Comm'r of Soc. Sec. Admin.*, 507 F. App'x 709, 712 (9th Cir. 2013) ("Although

7   the ALJ found that [the claimant] suffered moderate difficulties in maintaining

8   concentration, persistence, or pace, the ALJ erred by not including this limitation in the

9   residual functional capacity determination or in the hypothetical question to the

10  vocational expert.").

11          However, the Ninth Circuit has also held that an ALJ may sufficiently account for

12  moderate difficulties in concentration, persistence, and pace by assessing an RFC

13  restricting the claimant to simple, routine, repetitive tasks, so long as that assessment is

14  consistent with restrictions identified in the medical opinion evidence. *Stubbs-Danielson*

15  *v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008); *see also Turner v. Berryhill*, 705 F. App'x

16  495, 498 (9th Cir. 2017) (reaffirming *Stubbs-Danielson*)*; Howard v. Massanari*, 255 F.3d

17  577, 582 (8th Cir.2001) (holding "capable of doing simple, repetitive, routine tasks"

18  adequately captured such deficiencies); *Hughes v. Colvin*, 599 F. App'x 765, 766 (9th

19  Cir. 2015) (same); *Sabin v. Astrue*, 337 F. App'x 617, 621 (9th Cir. 2009) (same).

20          The record contains 3 opinions concerning Plaintiff's work-related mental

21  limitations. The first was rendered by examining psychiatrist Erum Khaleeq, M.D. in

22  September 2013. AR 724-27, 1081. Dr. Khaleeq opined that Plaintiff could perform

23  simple and repetitive tasks but might have difficulty with detailed and complex tasks. AR

24

25

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS - 14

727. Dr. Khaleeq further opined that Plaintiff could accept instructions from supervisors and interact with coworkers and the public, but that she might have difficulty performing work activities on a consistent basis. *Id.* Dr. Khaleeq added that Plaintiff might have some difficulty maintaining attendance in the workplace due to her self-reported physical pain and symptoms, and might have difficulty completing a normal workday or workweek. *Id.*

The ALJ assigned "partial weight" to Dr. Khaleeq's opinion overall, adopting Dr. Khaleeq's opinion that Plaintiff could perform simple, routine and repetitive tasks, but giving "little weight" to his opinion that Plaintiff would have difficulty performing work on a consistent basis and maintaining attendance and completing a normal workday or workweek, reasoning that Dr. Khaleeq appears to have based these findings on Plaintiff's subjective reports of pain, rather than objective findings that showed normal strength, reflexes and intact sensation. AR 1081.

The record also contains the opinions of non-examining state agency psychologists Eugene Kester, M.D. and Thomas Clifford, M.D. AR 83-85, 102-04. In October 2013, Dr. Kester opined that Plaintiff was able to understand and recall simple routine tasks, could perform such tasks on a consistent basis, and would be able to maintain attention and focus for 2 hours at a time during the workday with appropriate breaks. AR 84. Dr. Kester added that Plaintiff might have occasional lapses in concentration due to pain. *Id.* Dr. Kester further opined that Plaintiff could adapt to routine changes in work tasks given appropriate supervision and time. AR 85. In February 2014 Dr. Clifford assessed identical limitations. AR 102-04.

The ALJ's RFC is supported by medical opinion evidence, and the ALJ did not

err in determining that, despite moderate difficulties in concentration, persistence, or

pace, Plaintiff could carry out simple, routine, and repetitive tasks and simple work-

related decisions. AR 1076; *see Howard v. Massanari*, 255 F.3d 577, 582 (8th Cir.2001)

(where state agency psychologist assessed claimant as having deficiencies in

concentration, persistence and pace and the ability to "sustain sufficient concentration

and attention to perform at least simple, repetitive, and routine cognitive activity without

severe restriction of function," the ALJ's hypothetical including a limitation to performing

"simple, routine, repetitive tasks" adequately captured claimant's deficiencies in

concentration persistence or pace).

D. <u>Remand with Instructions for Further Proceedings</u>

"'The decision whether to remand a case for additional evidence, or simply to

award benefits[,] is within the discretion of the court.'" *Trevizo v. Berryhill*, 871 F.3d 664,

682 (9th Cir. 2017) (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987)). If

an ALJ makes an error and the record is uncertain and ambiguous, the court should

remand to the agency for further proceedings. *Leon v. Berryhill*, 880 F.3d 1041, 1045

(9th Cir. 2017). Likewise, if the court concludes that additional proceedings can remedy

the ALJ's errors, it should remand the case for further consideration. *Revels*, 874 F.3d

at 668.

The Ninth Circuit has developed a three-step analysis for determining when to

remand for a direct award of benefits. Such remand is generally proper only where

> "(1) the record has been fully developed and further administrative
> proceedings would serve no useful purpose; (2) the ALJ has failed to
> provide legally sufficient reasons for rejecting evidence, whether claimant
> testimony or medical opinion; and (3) if the improperly discredited

evidence were credited as true, the ALJ would be required to find the claimant disabled on remand."

*Trevizo*, 871 F.3d at 682-83 (quoting *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014)).

The Ninth Circuit emphasized in *Leon v. Berryhill* that even when each element is satisfied, the district court still has discretion to remand for further proceedings or for award of benefits. 80 F.3d 1041, 1045 (9th Cir. 2017).

Here, the ALJ erred in evaluating Plaintiff's symptom testimony. The Court notes that in its earlier remand order,  Commissioner's reasoning regarding Plaintiff's symptom testimony was found to be deficient. AR 1153-60. The Ninth Circuit has noted that its precedent and the objectives of the credit-as-true rule mean that allowing the ALJ to have "a mulligan" does not qualify as a remand for a "useful purpose" under the first part of credit-as-true analysis. *Garrison v. Colvin*, 759 F.3d 995, 1022 (9th Cir. 2014).

If Plaintiff's testimony concerning her physical impairments were credited as true, remand for an award of benefits would be the appropriate remedy. *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1041 (9th Cir. 2007) ("[W]e will not remand for further proceedings where, taking the claimant's testimony as true, the ALJ would clearly be required to award benefits."). However, the Ninth Circuit has also held that "a reviewing court is not required to credit claimants' allegations regarding the extent of their impairments as true merely because the ALJ made a legal error in discrediting their testimony." *Treichler v. Comm'r of Social Sec. Admin.,* 775 F.3d 1090, 1106 (9th Cir. 2014).

1   The District Court may remand on an open record for further proceedings "when

2   the record as a whole creates serious doubt as to whether the claimant is, in fact,

3   disabled within the meaning of the Social Security Act." *Burrell v. Colvin*, 775 F.3d 1133,

4   1141 (9th Cir.2014) (quoting *Garrison v. Colvin*, 759 F.3d 995, 1021); *see also Connett*

5   *v. Barnhart*, 340 F.3d 871, 874–76 (9th Cir. 2003) (finding that a reviewing court retains

6   discretion to remand for further proceedings even when the ALJ fails to "assert specific

7   facts or reasons to reject [the claimant]'s testimony").

8   The record does not contain an opinion from an acceptable medical source

9   finding that either Plaintiff's physical or mental impairments are disabling. As such, the

10   record in this case, when considered as a whole, creates serious doubt as to whether

11   Plaintiff is disabled within the meaning of the Social Security Act. Accordingly, remand

12   for further proceedings is the appropriate remedy.

13   <center>CONCLUSION</center>

14   Based on the foregoing discussion, the Court finds the ALJ erred when found

15   Plaintiff was not disabled. Defendant's decision to deny benefits is therefore

16   REVERSED and this matter is REMANDED for further administrative proceedings. The

17   ALJ is directed to re-evaluate Plaintiff's testimony on remand.

19   Dated this 18th day of June, 2020.

20   *Theresa L. Fricke*

Theresa L. Fricke
United States Magistrate Judge

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS - 18